FREEMAN BASSETT v. STATE.

No. A-7380. Opinion Filed May 17, 1930.
(288 Pac. 392.)

E. E. Ammons, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter for convenience referred to as the defendant, was convicted of having in his possession spirituous, fermented malt and intoxicating liquor, to wit, about one quart of whisky, with the unlawful and wrongful intent then and there on the part of him the said Freeman Bassett of bartering, selling, giving away, and otherwise disposing of the same contrary to the statutes, and was sentenced to pay a fine of $200 and costs, and to be confined in the county jail for 90 days, from which judgment the defendant has appealed to this court.

An abstract of the testimony is as follows:   Ed Allen testified for the state, as follows:

"I went to Freeman Bassett's on about the 10th of November, 1928; I signed the affidavit before a justice of the peace for a search warrant; when we drove up a girl went in the house and told some one to hurry and pour it out; Mr. High and Mr. Waddle went in the house, and I went to the west door and served a copy of the warrant on Freeman's wife; then I went into the kitchen; Mr. High was standing by the cook stove with a fruit jar in his hand; it had something like a pint of dishwater in it; the dishpan was on the stove, and the dishwater smelled very strongly of whisky; I really don't think I examined the dishpan; there was a hole in the floor in one of the rooms, looked like it had been burned through the wood; I smelled whisky there; I could not say whether there was any whisky in any quantity mixed in the dishpan or in the fruit jar, there was whisky in it; there was some jugs and jars around there; I did not taste anything we found there."

330

Witness was then asked the following questions:

"Q. I will ask you, if you know, to answer the question yes or no, if the question is now sustained, if you knew on the 10th of November, 1928, what the general reputation was in and about the city of Eufaula, as to being a place where intoxicating liquor was kept for sale in violation of law?

"The Court: The question has been modified, do you desire to object to the question as it is now put?

"Mr. Ammons: Yes.

"The Court: Overruled.

"Mr. Ammons: Exceptions.

"Q. What is the answer? A. Yes sir.

"Q. Was that reputation good or bad? A. Bad."

On cross-examination, witness stated:

"I had no idea how much whisky was there; I believe I smelled whisky where it was poured through the floor; I never examined the dishpan; I never said there was whisky in the dishpan, I said there was whisky in the jar; I don't know how much dish water was in the jar, I don't know how much whisky was in it, there was between a pint and a quart of liquid in the jar; I did not taste it, I could not have done it then. The defendant Freeman Bassett was not at home at the time."

A. B. High testified he was at the defendant's place about the 10th of November, 1928; Mr. Allen was under the steering wheel when they drove up:

"I jumped out on the right hand side of the car; when we drove up Freemans girl was at the wood pile; when we stopped the car the girl ran into the house, I took after her; Mr. Allen had the search warrant; she beat me to the dishpan and there is where I found the whisky in a fruit jar, it had not all been poured out; in the southwest room there was a pretty fair hole in the floor; there was

some empty jars, bottles and things like that in the room; I don't remember whether there was any smell of whisky in these jars or bottles; the dishpan was full of dishes and water in it; the water in the dishpan was warm and brought out the smell of whisky very strong; the fruit jar had whisky and dishwater in it."

The witness High was asked the same question as the witness Allen was asked, as to whether he knew the general reputation of the defendant's residence as being a place where intoxicating liquor was kept for the purpose of bartering, selling, giving away, and otherwise furnishing the same. The defendant objected, and the objection was overruled, and the defendant excepted. The witness then answered that the reputation was bad.

On cross-examination, witness stated that there was whisky in the home of the defendant but it was impossible to tell just how much there was of it: "I smelled whisky in the dish water in the pan and in the fruit jar." On re-direct examination, witness stated he remembered the defendant was at home when he was arrested.

Freeman Bassett testified in his own behalf that he was out of town the time the officers claim to have gone to his house; that he did not have any whisky in his residence when he left home; does not know what occurred during his absence; "I did not have any whisky in my possession; the search was made while I was living with my family." Witness was asked about having been previously convicted of violation of the prohibitory laws and admitted he had been convicted once. "When I returned home, my family advised me the officers had been there raiding." Witness admitted about seven or eight years ago he was convicted of violating the prohibitory laws. This is all the testimony introduced in the case.

At the close of the state's testimony, the defendant demurred to the testimony on the ground that it was insufficient to sustain a conviction, which was overruled, and defendant excepted.

The defendant has assigned ten errors alleged to have been committed in the trial of his case. The ninth and tenth assignments will be considered together; the ninth being that the court erred in permitting the case to go to the jury, for the reason that the evidence failed to show that there was as much as one quart of whisky found at the premises mentioned in the information. Tenth, the verdict of the jury is contrary to the law, the verdict of the jury is contrary to the evidence, and that the verdict of the jury is contrary to both the law and the evidence. In the record it was stipulated that no question as to the validity of the search warrant would be raised by the defendant. An examination of the record shows that the home of the defendant was searched by the officers. One of the officers stated that a girl said something about pouring out something as they went into the house. The other officer, according to his own testimony, got out of the car first, says the girl ran in the house, but says nothing about her saying to pour something out. When the officers got in the house, they found a dishpan on the stove, with dishes in it, and a fruit jar near the dishpan with dishwater in it. Both of the officers say it had some whisky in it. They also say there was an odor of whisky in the dishpan, and also at the hole in the floor in one room of the house. They found no quantity of whisky except the quantity found in the fruit jar, which neither of the officers tasted; the testimony of the officers being that the dishwater in the pan and the fruit jar in which there was some dishwater smelled like the odor of whisky. No quantity is given, the allegation in the information be-

ing that they found about a quart of whisky. The word "about" is an indefinite term, and might be interpreted to mean any quantity of whisky less than a quart. The defendant was not at home, and on his return he was advised that the officers had been to his house and searched it. He stated positively that when he left home he did not have any whisky; that he had nothing to do with any whisky found there. He admits that seven or eight years ago he had been convicted of the violation of the prohibitory laws, but in that connection the court limited his statement as only going to his credibility as a witness. There is no testimony in the record showing that the defendant, at the home where he resided, had ever sold, bartered, given away, or otherwise furnished to any one any quantity of whisky.

The testimony in this case tends to show that, if any whisky was found, it was less than one quart, and therefore the quantity of whisky found was not prima facie evidence of intent to sell, barter, give away, and otherwise furnish to others. Where the quantity of whisky is less than a quart, the intent to sell is the gist of the offense, and in this case there is no testimony whatever tending to show the intent of the defendant to barter, sell, give away, or otherwise furnish the whisky alleged to have been found at the home of the defendant, nor is there any testimony connecting the defendant with the possession of the whisky. All the testimony tended to show that whatever was found, if any, was found in the defendant's home in his absence. The testimony is insufficient to sustain the judgment.

The case is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.